IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : |
|---|---|
| | : |
| v. | : CRIMINAL DOCKET NO.: 19-72 |
| | : |
| PHILIP NARDUCCI, et al | : |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of Defendant PHILLIP NARDUCCI'S response to the United States' motion in limine, it is hereby **ORDERED** that the United States' motion is **DENIED.**

**AND IT IS SO ORDERED**

_____
TIMOTHY J. SAVAGE, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| v. | : | CRIMINAL DOCKET NO.: 19-72 |
| | : | |
| PHILIP NARDUCCI, et al | : | |

**DEFENDANT PHILLIP NARDUCCI'S RESPONSE TO THE UNITED STATES' MOTION IN LIMINE TO EXCLUDE CERTAIN IMMIGRATION INFORMATION PERTAINING TO RABIH HUSSEIN MASRI**

  Defendant, PHILLIP NARDUCCI, by and through his attorney, Brian J. McMonagle, Esquire, respectfully requests that the Court deny the United States' motion in limine excluding evidence of certain immigration information relating to Rabih Hussein Masri (hereinafter Masri). In support thereof, defendant states the following:

## PROCEDURAL HISTORY

1. On January 30, 2019, the grand jury indicted defendant Philip Narducci by charging him with Making Extortionate Extensions of Credit and Conspiracy to Collect Extortionate Extensions of Credit.

2. The Government alleges that Mr. Narducci loaned Rabih Masri money at a usurious rate and then used force and threats of force to compel repayment of the loan.

3. The defendant contends that Masri, a long time government informant, is a degenerate gambler who used false pretenses to obtain legitimate loans from several Philadelphia business owners, and is now trying to avoid repayment with the assistance of the FBI. Specifically, Masri told Mr. Narducci and others that he wanted to borrow money to assist with medical bills for his dying mother. In short, Mr. Masri is a scam artist.

4. Realizing that he owed hundreds of thousands of dollars to Mr. Narducci and others, Masri told the FBI that he had borrowed the money and was being threatened by Mr. Narducci. Obviously, he never told the FBI that he had borrowed the money from Mr. Narducci and his wife under the false pretense that he needed to use the money for a transplant for his dying mother. Inexplicably, the FBI started making Mr. Masri's loan

payments, and began wiretapping conversations that Masri was having with Mr. Narducci and his co-defendant.

5. After Mr. Narducci was indicted on these charges, he filed motions requesting information about Mr. Masri's immigration status. The government has recently turned over information that Mr. Masri sought asylum in the United States after having served in a terrorist organization in Lebanon.

6. Masri entered the United States on or about April 28, 1998 as an alien on a non-immigrant tourist visa. He remained in the United States well after the expiration date of his tourist visa, which expired on October 27, 1998. As a result, the Immigration and Naturalization Service initiated removal proceedings against him. On March 21, 2000, Masri submitted an application with the Immigration and Naturalization Service requesting asylum, withholding of removal and adjustment of status. After hearings on the application, immigration Judge Malloy issued a written decision in which Judge Malloy denied Masri's asylum claim and denied his request for adjustment of status based on his membership in Amal, a terrorist organization in Lebanon. Judge Malloy did grant Victim A's request for withholding of removal proceedings.

7. Judge Malloy found Masri's testimony not credible, and that Masri had intentionally misled the Court about his involvement in terrorism.

8. The Asylum Officer, in his assessment, came to the conclusion that Masri was not credible regarding his association with Amal, a terrorist organization.

9. The Government has filed a motion to hide these truths from the jury.

**ARGUMENT**

The Sixth Amendment guarantees a defendant the right to cross-examine the government's witnesses. *See* U.S. Const. amend. VI. Under Federal Rule of Evidence 607, any party "may attack the witness's credibility." Under Federal Rule of Evidence 608(b), "the court may, at its discretion permit questioning about specific instances of conduct on cross-examination, but only if the conduct is probative of the witness's character for truthfulness or untruthfulness." *United States v. Williams*, 464 F.3d 443, 448 (3d Cir. 2006). "The classic example of a permissible

inquiry would be an incident in which the witness had lied." *United States v. Bocra*, 623 F.2d 281, 288 (3d Cir. 1980).

The previous credibility findings of Masri by Judge Malloy and an Asylum Officer are probative of his character for truthfulness and are therefore admissible.

Generally, this Court has set out factors that a judge must consider in deciding whether to allow inquiry about past conduct. *See United States v. Lundy*, 416 F. Supp. 2d 325, 330-31 (E.D. Pa. 2005). The court has explained that "[t]he character of the previous conduct, the importance of the testimony, and the probable effect on the jury of if the conduct is divulged are all factors a judge must consider in deciding whether to allow inquiry about past conduct." *United States v. Lundy*, 416 F. Supp. 2d 325, 330-31 (E.D. Pa. 2005) (*quoting United States v. Butch*, 48 F. Supp. 2d 453, 462 (D.N.J. 1999)). "In addition to these factors, the trial court must also consider the age of the misconduct and its remoteness in time to the instant charges...Remoteness may reduce the probative value of certain evidence, but it does not preclude its admission under Rule 608(b)." *Lundy*, 416 F. Supp. 2d at 330-31 (*quoting United States v. Butch*, 48 D. Supp. 2d 453, 462 (D.N.J. 1999)).

Masri was previously found not credible while testifying under oath. He was also found not credible by an Asylum Officer when applying for political asylum in the United States. These two instances are proof that Masri does not appreciate the importance of testifying under oath; the same oath that he must take when he testifies at Mr. Narducci's trial.

More importantly, this evidence is probative of the fact that Masri has proven to be untruthful in matters when he is trying to obtain a personal benefit, such as being granted political asylum, or in the present case being eligible for a non-immigrant U-Visa, as a "victim" of a crime such as extortion. Masri's testimony is the lynchpin of the government's case, and the jury should be made aware of his propensity to lie under oath, and to lie for his own personal benefit. Excluding

the fact that Masri has previously been found not credible on two separate occasions, would be unfairly prejudicial to defendant Narducci. Excluding this information would not allow the jury to adequately assess the credibility of his testimony at trial.

It is true that Judge Malloy's and the Asylum Officer's credibility determination regarding Masri was over 11 years ago. However, remoteness does not preclude admission of the evidence under Rule 608(b). Although the evidence may be remote in time, it is nevertheless probative of Masri's character for truthfulness. Masri was found not credible under oath during his immigration proceeding. More importantly, he was found to have misled the Immigration Court about his involvement in a terrorist organization. In the present case, Masri will be under the same oath when he testifies against defendant Philip Narducci. Furthermore, Masri has a similar motive to be untruthful again. Like in his immigration proceeding where he attempted to gain asylum, Masri will be eligible for a non-immigrant U-Visa if it is determined that he "has been helpful...to a Federal, State, or local prosecutor." INA 101(a)(15)(U)(i)(III). He will receive a benefit from being untruthful in the present case, which was his motive for being untruthful in his asylum application and proceeding. The United States' argument is flawed when stating Masri is receiving no benefit from his testimony. Masri will receive the benefit of a U-Visa if his testimony is "helpful" to the prosecution. Moreover, the FBI has already intervened with the Immigration Court on Masri's behalf and continues to assist him in his efforts to remain in the United States.

The United States has cited seven factors that the Second Circuit put forth for courts to consider when determining the relevancy and probative value of a prior court's finding that a witness had lied, which include:

> (1) Whether the prior judicial finding addressed the witness's veracity in that specific case or generally; (2) whether the two sets of testimony involved similar subject matter; (3) whether the lie was under oath in a judicial proceeding or was made in a less formal context; (4) whether the lie was about a matter that was significant; (5)

>how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness; (6) the apparent motive for the lie and whether a similar motive existed in the current proceeding; and (7) whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible.

Here, each of the enumerated factors are satisfied. First, the prior judicial finding addressed Masri's veracity in that specific case, and it is important to note that both Judge Malloy and the Asylum Officer found that Masri had lied to shield his involvement in a terrorist organization. The United States has tried to argue that there were separate subject matters at issue in these cases, and that Masri is not receiving a benefit for his testimony. Their argument is flawed and disingenuous. By testifying in this case and "helping" the United States, Masri will receive the benefit of a U-Visa. As such, has the same motive to be not credible as he did during his immigration proceeding. The motive to fabricate testimony in this case, as in his immigration case, will benefit him by giving him the opportunity to adjust his immigration status.

The third and fourth prongs are also satisfied. Masri's previous testimony where he was found not credible was certainly under oath in a judicial proceeding. The same oath that he will take in the present case. In addition, the testimony that was found not credible was about a significant matter. It concerned Masri's immigration status. Masri's testimony in the present case is also about a significant matter, and has the potential to provide the means for a terrorist to continue to reside in the United States.

The fifth prong of the analysis is easily satisfied. Eleven years has elapsed since Masri was found not credible, and the evidence shows that he continues to bargain with deceit in an effort to benefit himself. During that time, there has been no indication that there has been an intervening credibility determination regarding this informant.

The sixth prong is also satisfied. Eleven years ago Masri's motive for lying was to benefit his immigration status. In the present case, he has the same motive. By fabricating and falsifying

testimony, can continue to use the FBI to advocate for him to stay in the United States ,and it allows for him to attempt to receive a U-Visa so he can remain in the United States and adjust his immigration status.

Lastly, Masri has never offered any explanation for his lies, but his reason was self evident. Masri knew he had to lie to the Immigration Court about his terrorist activities in order to gain asylum in the United States.

The United States offers the flawed argument that Masri is receiving no benefit from his testimony. They do so well realizing that by portraying him as a victim will allow him to rely on the pronouncements of INA 101(a)(15)(U), which provides in relevant part:

> (i) subject to section 214(p), an alien who files a petition for status under this subparagraph, if the Secretary of Homeland Security determines that--
> (I) the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);
> (II) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) possesses information concerning criminal activity described in clause (iii);
> (III) the alien (or in the case of an alien child under the age of 16, the parent, guardian, or next friend of the alien) has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official, to a Federal, State, or local prosecutor, to a Federal or State judge, to the Service, or to other Federal, State, or local authorities investigating or prosecuting criminal activity described in clause (iii); and
> (IV) the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States;
> (ii) if accompanying, or following to join, the alien described in clause (i)--
> (I) in the case of an alien described in clause (i) who is under 21 years of age, the spouse, children, unmarried siblings under 18 years of age on the date on which such alien applied for status under such clause, and parents of such alien; or
> (II) in the case of an alien described in clause (i) who is 21 years of age or older, the spouse and children of such alien; and
> (iii) the criminal activity referred to in this clause is that involving one or more of the following or any similar activity in violation of Federal,
> State, or local criminal law: rape; torture; trafficking; incest; domestic violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; stalking; female genital mutilation; being held hostage; peonage; involuntary servitude;

> slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; **extortion**; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; fraud in foreign labor contracting (as defined in section 1351 of title 18, United States Code); or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes. INA 101(a)(15)(U).

Because this evidence is admissible under Rule 608(b), an analysis under Rule 403 must be considered. Rule 403 dictates that evidence may be excluded where the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

The prior credibility determination is probative. The probative value is not substantially outweighed by the danger of unfair prejudice. This evidence is necessary for the jury to properly evaluate Masri's character for truthfulness. This evidence is probative because Masri is the main witness against defendant Philip Narducci. Furthermore, excluding this evidence would be unfairly prejudicial to defendant Mr. Narducci because it would deny him a full and fair opportunity to cross examine his accuser.

The United States, in its motion, cites *Hairston v. Washington Metro. Area Transit Auth.*, 1997 WL 411946, at 2* (D.D.C. Apr. 10, 1997), which states, "it is likely that judicial findings of fact would be given undue weight by a jury which would result in a serious danger of unfair prejudice to the defendant." The present case presents an entirely different scenario. In the present case, admitting this evidence would not unfairly prejudice the defendant. Instead, it would allow the defendant to receive a fair trial in which he can present evidence to his jury that will allow them to properly evaluate the credibility of terrorist turned informant who has manipulated the system to benefit himself. Furthermore, this evidence is not unfairly prejudicial because Masri is not the sole witness that will be offered by the United States during this trial. In fact, the United States has argued that it will present corroborating evidence, in the form of

wiretaps and other witnesses in order to sustain their burden of proof. Because Masri is not the sole source of evidence during this trial, evidence attacking his credibility will not be unfairly prejudicial to the United States and therefore should be admitted.

Defendant Narducci further submits that Judge Malloy's and the Asylum Officer's statements regarding Victim A's credibility are admissible under Rule 803(8) because these statements fall under the public records exception to the hearsay rule.

> **(8) *Public Records*.** A record or statement of a public office if:
> **(A)** it sets out:
> **(i)** the office's activities;
> **(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> **(iii)** in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
> **(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

These statements set out factual findings from a legally authorized investigation, namely an investigation into Masri's application for political asylum. The United States has not shown that the source of the information or other circumstances indicate a lack of trustworthiness. *See* Rule 803(8)(A)(iii) and Rule 803(B).

The United States has argued in its motion that the Rule 803 advisory committee note makes it plain that the drafters intended Rule 803(8) to relate to findings of agencies and offices of the executive branch. The Asylum Officer made a finding from a legally authorized investigation and this finding was from an agency and/or office of the executive branch. The Asylum Officer is an agent of the Department of Homeland Security which falls under the executive branch. Therefore, the finding that Masri was not credible in his application for political asylum, if hearsay, is admissible hearsay because it is a finding form a legally authorized investigation of an agency and office of the executive branch.

The United States argues that the terms "terrorist" and "terrorism" are highly prejudicial. The United States gives absolutely no explanation as to how these terms are prejudicial to The United States' case.

The United States cites two cases in its motion to exclude the terms "terrorist" and "terrorism". *United States v. Odeh* is a case from the Eastern District of Michigan, which has no binding authority on this Court. *United States v. Pugh* is a case from the Eastern District of New York, which also has no binding authority on this Court.

Both cases cited by the United States involve unfair prejudice to the defendant. In the present case, any prejudice from these terms would be prejudicial to the United States. It would not interfere with the defendant's right to a fair trial. Furthermore, by excluding these terms, the defendant would not have a full and fair opportunity to cross-examine his accusers.

Masri's involvement with Amal is probative and should be admitted so the jury can properly assess his credibility. The probative value is not substantially outweighed by any unfair prejudice.

It is unimaginable that the U.S. Government would allow a terrorist to remain in the United States, allow him to use false pretenses to borrow money from business owners, indict the business owners, and hide from the jury the painful truth of this terrorist's subterfuge. The United States has failed to show that the unfair prejudice substantially outweighs the probative value and therefore, its motion to exclude the terms "terrorist" and "terrorism" must be denied.

## CONCLUSION

For the foregoing reasons, defendant Phillip Narducci, respectfully requests that the Court enter an order denying the United States' motion in limine to exclude evidence of certain immigration information relating to Rabih Masri.

Respectfully Submitted,


Brian J. McMonagle
Attorney for Phillip Narducci